IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYAN D. WILKINS,<br><br>                 Plaintiff,<br><br>   vs.<br><br>UNION PACIFIC RAILROAD COMPANY<br>and<br>LEONARD SHERER<br><br>                 Defendants. | **8:22CV239**<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the Court on Defendant's Statement of Objections to Magistrate Judges Order (Filing No. 172). Defendants are objecting to the Magistrate Judge's Orders dated June 26, 2025 (Filing No. 160), as supplemented by the Magistrate Judge's Order dated July 22, 2025 (Filing No. 171). The Orders were a result of a discovery dispute conference in this case (Filing No. 158). The Court will overrule the objections.

**PROCEDURAL BACKGROUND**

      Plaintiff Ryan D. Wilkins brings this action against Defendants Union Pacific and Leonard Sherer, the Vice President of the Union Pacific Law Department, for whistleblower retaliation, constructive discharge, and other related adverse actions in violation of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109. (Filing No. 45 at 1.)

      Starting in October 2014, Wilkins worked as an attorney in Union Pacific's Law Department. (Filing No. 45 at 2; Filing No. 48 at 7.) Wilkins alleges that until 2018, he was a "rising star" at Union Pacific: he received excellent performance ratings, held increased job responsibilities, earned several promotions, and was commended for "significant contributions and successes with [Union Pacific's] FRSA Whistleblower Team." (Filing No. 45 at 2.) In early 2017, Wilkins was allegedly chosen to succeed Kathy Hughes, Law Department leader of the FRSA

Whistleblower Team, and Patricia Kiscoan, Senior Labor Counsel and Union Pacific's lead attorney specializing in the Railway Labor Act.  (Filing No. 45 at 3-4.)

In early 2018, Wilkins helped implement Operating Instruction 35 ("OI 35"), an operational rule meant to prevent FRSA violations.  (Filing No. 45 at 5-6; Filing No. 48 at 7.)  The rule required the "Operating Department to obtain prior approval from the Law Department and Labor Relations for all contemplated terminations of unionized employees, system-wide at [Union Pacific]."  (Filing No. 45 at 5.)  Wilkins alleges he met with the internal investigations group at Union Pacific to discuss cases he referred for review.  (Filing No. 45 at 6.)  Wilkins and members of this group allegedly were concerned "whether they had the support they needed from [Union Pacific's] senior leadership to carry out the group's purpose."  (Filing No. 45 at 6.)  Wilkins worried that "internal investigations into particularly egregious cases like the ones he referred for further investigation would most likely not be welcomed by either the lower-level supervisors in the Operating Department who were administering the discipline or the higher-ranking senior officers that were often ordering the discipline."  (Filing No. 45 at 6.)  Allegedly, other members of the group were concerned that participating in the internal investigations "could cost each of them their jobs."  (Filing No. 45 at 6.)

Wilkins alleges his experience at Union Pacific began to deteriorate in October 2018 after Union Pacific abolished OI 35 and "implemented a new train operating strategy called Precision Scheduled Railroading (PSR)[.]"  (Filing No. 45 at 6.)  Union Pacific then terminated two high-ranked employee-members of the internal investigations team and hired Sherer to be Vice President of the Law Department.  (Filing No. 45 at 7-8.)  In late 2018 into early 2019, Union Pacific and Sherer allegedly retaliated against Wilkins for his FRSA advocacy by reassigning his responsibilities, passing him over for promotions, rendering low performance ratings, and removing him from his roles at the company without discussion.  (Filing No. 45 at 7-8, 11.)

On June 17, 2019, Wilkins met with Sherer to discuss his mid-year review.  (Filing No. 45 at 9.)  Wilkins alleges he asked Sherer during this meeting "whether the purpose of Sherer's actions was to reduce his importance to the organization and put him in the position to be laid off in the next round of reduction-in-force."  (Filing No. 45 at No. 10.)  Wilkins alleges Sherer denied this purpose.  (Filing No. 45 at 10.)  But in this same conversation, Wilkins alleges Sherer accused him

2

of "using company funds to buy his wife a 'short stack' of pancakes during a business trip in May 2019[,]" and presented Wilkins with a highlighted restaurant receipt to show Wilkins had ordered "an egg dish and a short stack of pancakes[.]"  (Filing No. 45 at 10.)  Wilkins further alleges, "Sherer told Wilkins that he has seen him eat, and that he knows Wilkins does not have that big of an appetite[,]" and Sherer reported he had referred the matter for an internal audit.  (Filing No. 45 at 10-11.)

At the end of this meeting, Sherer allegedly stated Wilkins had been "next-in-line" for a promotion to head of Union Pacific's Labor Relations Department, an executive position held by Patricia Kiscoan, one of the employees for whom Wilkins had been selected as a successor.  (Filing No. 45 at 4, 11.)  Sherer allegedly told Wilkins, "I don't know what happened, but you were her successor. Either perceptions of you changed, or maybe it's the company that changed, but that job was yours."  (Filing No. 45 at 11.)  Wilkins left the meeting "feeling intimidated and even more fearful that Sherer was working to get him fired from [Union Pacific]."  (Filing No. 45 at 11.)

In July 2019, Wilkins filed a complaint with Department of Labor, Occupational Safety and Health Administration (OSHA) pursuant to 49 U.S.C. § 20109.  (Filing No. 45 at 11).  Wilkins alleges after he filed this complaint, Union Pacific slated him for the next reduction-in-force, constructively discharged him, and then denied him severance.  (Filing No. 45 at 12-13).  Wilkins filed the present action in the United States District Court after his OSHA complaint was dismissed.  (Filing No. 1 at 13-14.)

The parties have had several discovery disputes in this case.  This current dispute traces back to the Magistrate Judge's order on Wilkins' Motion to Compel, issued on September 27, 2024 (Filing No. 110).  The crux of the dispute is the relationship between the September 27, 2024 Order and the scope of discovery it set forth and the Magistrate Judge's subsequent set of discovery rulings, issued during a telephone conference with the attorneys on June 26, 2025 (Filing No. 164), which was supplemented by a written order on July 22, 2025 (Filing No. 171).

3

1.      **September 27, 2024 Order**

In the September 27, 2024 Order, the Magistrate Judge ruled on several overbreadth objections by Union Pacific to Wilkins' Requests for Production of Documents ("RFP"). The rulings important to the present dispute are summarized as follows.

The Magistrate Judge overruled Union Pacific's objection to a request for Defendant Sherer's complete employee and/or personnel file (RFP No. 2). During the discovery conferral process, Wilkins had offered to limit the request to performance, disciplinary, and salary/payroll records. (Filing No. 110 at 16.) The Magistrate Judge adopted this limitation and directed Union Pacific to supplement its response to RFP No. 2 as proposed by Plaintiff. However, the Magistrate Judge sustained Union Pacific's objection to a request for personnel files for "any current or former employee" who was an attorney in the Union Pacific Law Department for the two years prior to Wilkins' last day of employment (RFP No. 4). (Filing No. 110 at 16.)

The Magistrate Judge sustained Union Pacific's relevance objection to a request for "all communications" discussing "discussing certain topics regarding Wilkins' promotions/demotions/reduction in force/resignation/rejections for positions/company related expenses for Hawaii/his referral to the corporate audit office/decision to remove Sierra Poulson as his direct report, and the like" (RFP No. 10). (Filing No. 110 at 19.) The Magistrate Judge reasoned a request for "all communications" was too broad, and the request would be limited to ten custodians for the period between October 1, 2018, and September 1, 2019. (Filing No. 110 at 19.)

The Magistrate Judge also sustained Union Pacific's overbreadth objections to requests for information about Union Pacific's policies and documents related to OI 35 and injuries and safety complaints (RFP Nos. 48, 50, 51, 52, 54, 55, 56, 57, and 58). (Filing No. 110 at 5-6, 26.) These requests collectively sought "documents reflecting the total number of employee injuries and safety violations reported to [Union Pacific] from 2015 to 2019, information on the causal link between PSR and an increase of employee injuries from 2018 to the present, and documents related to all the FRSA-violative policies and practices (i.e., Nurse First, targeted drug testing, termination of probationary employees, and increased scrutiny of performance)." (Filing No. 110 at 26.) The Magistrate Judge determined these requests were overbroad and not proportional to the needs of

4

the case and accordingly declined to order Union Pacific to produce documents responsive to those requests.  (Filing No. 110 at 26.)

However, the Magistrate Judge overruled Union Pacific's objection to RFP 49, a narrower request for communications between Sherer and Tom Lischer, Union Pacific's Executive Vice President of Operations, about employee injury reports and employee safety complaints.  (Filing No. 110 at 26; Filing No. 175 at 17.)  The Magistrate Judge reasoned that the request was "directly relevant to Wilkins' allegations that Sherer advised Wilkins of 'new marching orders' from Lischer to 'start getting a lot more aggressive with these injury-reporters and serial safety complainers[,]'" and appropriately limited in time to October 2018 and September 2019.  (Filing No. 110 at 26.)  Similarly, the Magistrate Judge overruled Union Pacific's objection to RFP 59 because it was "similarly limited to seeking investigatory, disciplinary, or Labor Relations-related documents and ESI concerning the potential disciplining of Operating Department employees for who Plaintiff opposed or advised against such discipline between October 1, 2018, and July 1, 2019."  (Filing No. 110 at 26.)

2.  **June 26, 2025 Order**

On June 26, 2025, the Magistrate Judge held a discovery dispute conference to address Union Pacific's objections to Wilkins' 30(b)(6) deposition topics ("Topics") and Wilkins' request for Union Pacific to supplement its discovery responses to RFP Nos. 2 and 10.  (Filing No. 158; Filing No. 164.)

*Disputed Deposition Topics*

The Magistrate Judge overruled Union Pacific's objections to the deposition topics regarding Sherer's termination from employment with Union Pacific (Topics 6(e) through (g)), and comparator evidence of employees promoted to Senior Counsel in June 2018 and July 2019 (Topics 7, 8, 9, 13).  (Filing No. 164 at 21-23.)  Union Pacific also objected to deposition topics relating to injury reports and safety violations (Topics 18, 19, 20, and 21), to which the Magistrate Judge responded by limiting the scope of the topics.  (Filing No. 164 at 25-27.)

Topics 6(e) through (g) specifically sought information on "Defendant Leonard Sherer's employment with Defendant [Union Pacific]," including reasons for separation or termination

5

from employment with Union Pacific, the persons responsible for making the decision to terminate Sherer's employment, and severance or settlement compensation paid to Sherer following his termination. (Filing No. 147 at 2.) Union Pacific argued that enabling Plaintiff to allow the categories of testimony at issue would "simply circumvent the Court's prior order on what types of documents and information that Union Pacific needed to search for and produce." (Filing No. 164 at 16.) Union Pacific interpreted the September 27, 2024 Order to require Union Pacific to "produce Mr. Sherer's personnel file and documents relating to his performance, discipline, and salary/payroll information during his employment[,]" and Topic 6 "improperly expand[ed] the scope of discovery" beyond what was set forth in the September 27, 2024 Order. (Filing No. 158-2.) The Magistrate Judge rejected Union Pacific's interpretation of the September 27, 2024 Order's limitations and found Topic 6 to be proper. (Filing No. 164 at 21-22.)

Topics 7, 8, and 9 sought comparator information on Torry Garland, another Union Pacific attorney-employee in the Law Department during Wilkins' tenure who was promoted to Senior Counsel in June 2018. (Filing No. 158-2.) Specifically, Topics 7, 8, and 9 requested information on "the timing, circumstances, and reasons for promoting Torry Garland from 2018 to present[,]" his total compensation "for the time period he has held the position of Senior Counsel to present[,]" and Union Pacific's "claims that Torry Garland was equally or better qualified than [Wilkins] for the position of Senior Counsel." (Filing No. 147 at 3.)

Union Pacific argued the information was irrelevant because (1) Garland was promoted in June 2018, 180 days before Wilkins' filing of the OSHA Complaint, so a claim for failure-to-promote would be time-barred, (2) Wilkins cannot demonstrate he applied for the Senior Counsel position, so the requested information would be irrelevant, and (3) the September 27, 2024 Order recognized the "employees' privacy interests in their employment records and Plaintiff's overbroad request in seeking such information." (Filing No. 158-2 at 1-2.) Wilkins rebutted that such information was relevant because it related to Wilkins' claim that he was passed over several times for promotion to Senior Counsel despite being qualified and Union Pacific's argument that Garland was more qualified for the position than Wilkins. (Filing No. 158-1 at 1-2.)

The Magistrate Judge overruled Union Pacific's overbreadth objections to Topics 7, 8, and 9, relying on the limitations contained in the requests. (Filing No. 164 at 22.) The Magistrate

6

Judge found the topics to be properly limited in time by commencing in 2018, the same timeframe reflected in RFP No. 60, which regarded Senior Counsel compensation, and the Magistrate Judge had found to be proper in the September 27, 2024 Order.  (Filing No. 164 at 22; Filing No. 110 at 26.)

Similarly, Topic 13 requested comparator information on John Menicucci, another Union Pacific attorney-employee promoted to Senior Counsel.  Topic 13 regarded Menicucci's "total compensation, including salary, bonuses, stock awards, health, and retirement benefits for the time period she [sic] has held the position of Senior Counsel to the present."  (Filing No. 147 at 17.) Union Pacific argued Topic 13 was overbroad because Union Pacific had already produced documents reflecting compensation for the positions of Senior Counsel, Assistant Vice President of the Law Department, and Vice President of the Law Department from 2018 to the present, and this request would require Union Pacific to search for and produce additional documents specific to Menicucci for the six-year time frame in which Menicucci had held all three positions.  (Filing No. 158-2 at 2.)  The Magistrate Judge overruled Union Pacific's overbreadth objection, finding that the topic was necessarily limited to the time that Menicucci held the Senior Counsel position only, which was from July 1, 2019, until June 30, 2022.  (Filing No. 164 at 22.)

The Magistrate Judge limited the durational scope of the deposition topics seeking information and injury reports and safety violations (Topics 18, 19, 20, and 21) and found them to be proper as limited.  (Filing No. 164 at 29-31.)  Topic 18 asked for the total number of injury reports made by Union Pacific employees from 2015 to 2019.  (Filing No. 147.)  Topic 19 asked for the total number of safety violations reported by Union Pacific employees from 2015 to 2019. (Filing No. 147.)  Topic 20 asked for Union Pacific's "internal study or review of data related to the causal relationship between 'Precision Scheduled Railroading' and employee reported injuries from 2018 and 2019."  (Filing No. 147.)  Topic 21 requested Union Pacific's "internal controls, rules, procedures, policies, and practices" during Wilkins' tenure pertaining to Operational Instruction 35, termination of unionized employees, injury protocols, and termination or discipline of injured employees.  (Filing No. 147.)  Union Pacific requested Topics 18, 19, 20, and 21 "be limited to the parameters established by [the September 27, 2024 Order,]" which limited requests for information on injuries and safety complaints to communications between Sherer and Lischer

7

about employee injury reports and complaints between October 2018 and 2019, and potential disciplinary actions between October 1, 2018 and July 1, 2019. (Filing No. 158-2.)

The Magistrate Judge agreed that Topics 18 through 21 should be limited by the September 27, 2024 Order, and limited the Topics 18, 19, and 21 to the communications between Sherer and Lischer between October 2018 and September 2019, like in the September 27, 2024 Order. (Filing No. 164 at 23, 25.) However, the Magistrate Judge permitted Topic 20 to seek information through 2019 to enable Wilkins to ask about any annual studies or information kept at intervals that would be precluded if the time frame were limited to October 2018. (Filing No. 164 at 26-27.) Additionally, the Magistrate Judge allowed Topic 21(a)'s time frame to predate October 2018, to span the time frame in which OI 35 was in place, as OI 35 was terminated in October 2018. (Filing No. 164 at 31.)

*Disputed Supplemental Discovery*

In the June 26, 2025 order, the Magistrate Judge also ordered Union Pacific to supplement its response to RFP No. 2 with any internal complaints (called "Value Lines reports") resulting in disciplinary action to Sherer and its response to RFP No. 10 with any succession/contingency planning documents involving Wilkins. (Filing No. 164 at 39, 44.) Wilkins had requested Union Pacific to supplement its discovery responses with these documents after rescinding untimely additional requests for production in his 30(b)(6) Notice to Union Pacific. (Filing No. 158-4 at 2; Filing No. 158-1 at 2.) Union Pacific argued that the requests to supplement sought "new categories of documents and information not previously sought prior to the close of written discovery," and the documents were irrelevant. (Filing No. 158-2 at 2.)

The 30(b)(6) Notice to Union Pacific contained a request for "[a]ll documents and ESI regarding any complaints made about Sherer during his employment with [Union Pacific], including but not limited to Values Line reports." (Filing No. 147 at 6.) RFP No. 2 initially requested, "A complete copy of your employee and/or personnel files on Sherer including but not limited to any files (regardless of their title) on Sherer maintained by your owners, directors, human resources department, benefits department, law department or any other location within your organization." (Filing No. 110.)

8

Union Pacific argued that Values Line reports were not responsive to RFP No. 2 because "Values Lines reports in and of themselves are never part of personnel files or performance files." (Filing No. 164 at 36.) Union Pacific stated Values Line reports only show up in personnel files if they result in disciplinary actions, and Union Pacific produced the one disciplinary document located in Sherer's personnel file. (Filing No. 164 at 37.) Union Pacific did not produce the Values Line report itself because "Values Line complaints are maintained in a separate system outside of the personnel files[,]" and the complaint was never requested.[1] (Filing No. 164 at 37.)

The Magistrate Judge ordered Union Pacific to produce the Values Line complaint resulting in discipline to Sherer: "[I]f there's a Value Line [sic] report that then results in a disciplinary action that is in the personnel file that was produced, the Value Line report – the corresponding Value Line report should be produced too." (Filing No. 164 at 39.)

During the meet and confer process, Wilkins also requested Union Pacific to supplement its discovery responses with documents related to whether Wilkins "was considered for promotion in succession planning[.]" (Filing No. 158-3 at 2.) Wilkins contended that these documents would be responsive to RFP No. 10, which stated the following:

**REQUEST NO. 10:**

All communications, internal or external, electronic or written, sent to or received by any of your employees discussing the following:

a. Plaintiff being promoted and/or considered for promotion;
b. Plaintiff being demoted and/or considered for demotion;
c. Plaintiff's designation as high potential high performer;
d. Plaintiff being included in any reduction in force;
e. Plaintiff being terminated and/or considered for termination;
f. Plaintiff resigning his employment;
g. Plaintiff being considered and/or rejected for Senior Counsel;
h. Plaintiff being considered and/or rejected to replace Pat Kiscoan as AVP Labor Relations;
i. Plaintiff's company related expenses for his trip to Hawaii;
j. Plaintiff being referred to your Corporate Audit Office for any reason;
k. The decision to remove Sierra Poulson as Plaintiff's direct report;
l. The decision to remove Plaintiff's title of National FRSA Counsel; and
m. The decision to remove Plaintiff's title of Tribal Law Counsel.

---

[1] The Court notes that Union Pacific did not provide discovery responses indicating that such Values Line Reports existed until after the closure of written discovery and two years after such documents were initially requested. (Filing No. 64; Filing No. 123; Filing No. 171; Filing No. 175.)

9

(Filing No. 158-4 at 3; Filing No. 173 at 19.)

Union Pacific argued that documents relating to succession/contingency planning was different than promotions, which is what RFP No. 10 sought. (Filing No. 164 at 41.) Therefore, succession/contingency planning documents would be a category of documents not previously requested, and Union Pacific should not have to search and produce such documents that were not requested to prepare a 30(b)(6) corporate witness. (Filing No. 164 at 41.) Union Pacific asserted whether Wilkins was "identified on any contingency documents" was not "necessarily indicative of whether he was being identified for any promotional opportunities." (Filing No. 164 at 44.) Wilkins' position was that whether Wilkins was listed as a successor in any documents was "essentially about promotion and whether or not he could have been promoted to that position." (Filing No. 164 at 43.)

The Magistrate Judge overruled Union Pacific's objection and ordered production of succession/contingency documents "to the extent that [Wilkins'] name does appear on any succession or contingency planning during his period of employment, and going back to October of 2018." (Filing No. 164 at 46.)

### 3.    July 22, 2025 Order

After the June 26, 2025 Order, Union Pacific still did not produce the ordered Value Lines Reports, asserting attorney-client privilege and work product protections. (Filing No. 171.) On July 22, 2025, after an in-camera review of the documents, the Magistrate Judge found the Value Lines reports Bates labeled PRIV-UP-211239-211243 and PRIV-UP-211244-211248 were responsive and not privileged and again ordered Union Pacific to produce the reports.[2] (Filing No. 171.)

On July 31, 2025, Union Pacific timely submitted its objections to the June 26, 2025 Order, as supplemented by the July 22, 2025 Order. (Filing No. 172.) Union Pacific objects to the Magistrate Judge's overruling of its objections to Topics 6(e) through (g), 7, 8, 9, 13, 18, 19, 20, and 21 in Wilkins' Notice to Take 30(b)(6) Deposition of Union Pacific, and the compulsion to

---

[2] Magistrate Judge Nelson, in his July 22, 2025 order, also found that Internal Investigation Report Bates labeled PRIV-UP-211232-211238 were responsive, but they were protected by the attorney-client privilege and/or work product doctrine and did not have to be produced, with or without redaction. (Filing No. 171.)

produce the Values Line reports and succession/contingency planning documents. (Filing No. 172 at 1-2.)

## STANDARD OF REVIEW

On review of a magistrate judge's decision on a nondispositive matter, the district court may reconsider any part of the magistrate judge's order that it finds clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A decision is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed [,]" even if the record contains sufficient evidence to support the finding. *Light of the World Gospel Ministries, Inc. v. Village of Walthill, Nebraska*, 336 F.R.D. 567, 570 (D. Neb. 2020) (quoting *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011)) (quotations omitted). This standard of review is "extremely deferential." *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). Magistrate judges retain "broad discretion in managing pretrial discovery" and in limiting discovery to what, in the magistrate judge's opinion, are the "'central issues.'" *Mehner v. Panera, LLC*, 8:22CV168, 2023 WL 6810277 (D. Neb. Oct. 16, 2023) (quoting *Hills v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017)). The review of a magistrate judge's discovery rulings is "both narrow and deferential[.]" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018).

## DISCUSSION

Union Pacific presents two core arguments as to why this Court should sustain Union Pacific's objections to the Magistrate Judge's orders. First, Union Pacific contends that inconsistencies between the discovery rulings in the June 26, 2025 Order and the September 27, 2024 Order are clearly erroneous, warranting reversal of the Magistrate Judge's orders. (Filing No. 172.) Second, Union Pacific disputes the merits of the Magistrate Judge's determinations (1) on the relevancy of Topics 6(e) through (g), 7, 8, 9, 13, 18, 19, 20, and 21, and (2) the responsiveness of the Value Lines reports to RFP No. 2 and succession/contingency planning documents to RFP No. 10. (Filing No. 172.) The Court finds neither argument meritorious and, accordingly, overrules Union Pacific's objections.

11

I.   **Alleged Inconsistencies Between the June 26, 2025 and September 27, 2024 Orders**

Union Pacific asserts that the Magistrate Judge's determinations on Topics 6, 7, 8, 9, 13, 18, 19, 20, and 21 in the June 26, 2025 Order are inconsistent with the "parameters established" in the September 27, 2024 Order, specifically with the Magistrate Judge's rulings on the proper scope of RFP Nos. 2, 4, 48, 50, 51, 52, 54, and 55. ([Filing No. 173](#).)  However, the September 27, 2024 Order and June 26, 2025 Order are not inconsistent.  The Court has carefully reviewed each of the alleged inconsistencies identified by Union Pacific and finds nothing that is truly inconsistent.

RFP No. 2 and Topic 6 both seek Sherer's personnel information.  The Court does not agree that information regarding Sherer's termination and severance pay fall outside the scope of RFP No. 2.  Information pertaining to circumstances of Sherer's termination are reasonably within the scope of performance and disciplinary records, and severance payment information would appear to be in the scope of salary or payroll record information.

RFP No. 4 and Topics 7, 8, 9, and 13 seek comparator evidence.  The September 27, 2024 Order found RFP No. 4, which seeks personnel files for "any" employee attorney in the Law Department during a specific two-year period, to be overbroad.  ([Filing No. 110 at 16](#).)  However, Topics 7, 8, 9, and 13 are limited to the time in which the comparator position was held and to specific comparators, which is consistent with the Magistrate Judge's finding that RFP No. 4 was overbroad and consistent with the timeframe set forth in RFP No. 60.  ([Filing No. 164 at 21-23](#).)

RFP Nos. 48, 50, 51, 52, 54, 55, and Topics 18, 19, 20, and 21 regard Union Pacific's employee injury and safety policies and complaints.  ([Filing No. 173 at 12-15](#).)  Although the written requests were found to be overbroad, the Magistrate Judge limited the timeframes of Topics 18, 19, 20, and 21 to ensure they were proportional to the needs of the case, unlike the written discovery requests, which were not appropriately limited.  ([Filing No. 164 at 29-31](#).)

Accordingly, this Court rejects Union Pacific's contention the June 26, 2025 Order was clearly erroneous due to inconsistency with prior rulings.

## II. Appropriate Scope of Discovery

Union Pacific posits that the disputed deposition topics are irrelevant, and the Magistrate Judge erred in finding that the Values Line reports and succession/contingency planning documents were responsive to RFP No. 2 and RFP No. 10. This Court agrees with the Magistrate Judge that the disputed deposition topics are relevant and proper, and that the documents ordered to be produced are responsive to RFP Nos. 2 and 10.

"'Broad discovery' is the norm." *Stecklein & Rapp Chartered v. Experian Info. Sols., Inc.*, 113 F.4th 858, 861 (8th Cir. 2024). Parties may discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In determining the appropriate scope of relevant, discoverable information, the court considers "'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit[.]'" *Mehner v. Furniture Design Studios, Inc.*, 143 F.4th 941, 953 (8th Cir. 2025) (quoting Fed. R. Civ. P. 26(b)(1)). These relevance factors should be applied in a common sense and practical manner. *Id.*

### A. Deposition Topics

The deposition topics to which Union Pacific objects can be grouped into three categories: Sherer's personnel files (Topics 6(e), (f), (g)), comparator information about similarly situated employees promoted to Senior Counsel during Wilkins' tenure (Topics 7, 8, 9, 13), and information regarding employee injury reports and safety complaints or violations (Topics 18, 19, 20, 21). All these topics are directly relevant to Wilkins' claims of retaliation by Sherer and Union Pacific and could reveal evidence relating to causation or retaliatory motive.

#### 1. Topics 6(e), (f), (g)

Topics 6(e) through (g) aim to discover information regarding Sherer's termination from Union Pacific. Given the allegations that Sherer made comments on Wilkins' appetite, intimidated Wilkins in a professional meeting, and retaliated against Wilkins' for his FRSA advocacy, the circumstances of Sherer's termination could reveal information on "Sherer's motive

13

and pattern of retaliatory behavior, or his bias or hostility towards employees who engage in FRSA-protected activity." (Filing No. 175 at 11.)

Union Pacific contends that the Magistrate Judge's ruling is contrary to the law set forth in *Bailey v. City of Bellevue, Nebraska* where the Magistrate Judge limited discovery of a supervisory employee's personnel records "to the plaintiff's resignation date, unless files after resignation made specific reference to plaintiff or plaintiff's allegations in underlying lawsuit." (Filing No. 173 at 7.) 4:18CV3132, 2020 WL 5664947 (D. Neb. Sep. 23, 2020).

It is unclear how the decision in *Bailey* dictates that discovery of Sherer's personnel files are irrelevant in this case. First, unlike in this present action, in *Bailey*, the supervisor whose personnel files were sought was not the plaintiff's immediate supervisor or a defendant in the litigation. *Id.*, at *3. Second, the Magistrate Judge in *Bailey* was "persuaded" that the supervisor's personnel and employment files could contain information relevant to the plaintiff's claims, citing a case that permitted discovery into a supervisor's personnel file because it "could contain 'evidence regarding the manner in which he treated other employees, complaints about his conduct, and actions taken by Defendant in response to such complaints.'" *Id.* (citing *Lyoch v. Anheuser-Busch Cos., Inc.*, 164 F.R.D. 62, 68-69 (E.D. Mo. 1995)). Weighing the potential relevance of the information against the supervisor's privacy interests, the Magistrate Judge did not create a bright-line rule that discovery of such documents was limited to the plaintiff's time of employment. *Id.* Instead, the Magistrate Judge determined the temporal scope of discovery based on the relevancy of the information to the case weighed against the supervisor's privacy interests. *Id.* Therefore, the Magistrate Judge did not act contrary to law by failing to limit the discovery of Sherer's personnel files to the time period in which Wilkins was employed by Union Pacific.

While Sherer's privacy interests may be considered in determining the relevance of Topics 6(e) through (g), the Magistrate Judge has broad discretion in weighing those interests and making such a discovery determination. As it does not appear contrary to law that Defendant Sherer, a party in this case, be required to produce information that could reveal key evidence, this Court declines to find that the Magistrate Judge was clearly erroneous in determining the relevancy of Topics 6(e) through (g) outweighed Sherer's privacy interests.

### 2. Topics 7, 8, 9, 13

Topics 7, 8, 9, and 13 seek information on Garland and Menicucci as comparator-employees, as both were promoted to Senior Counsel during Wilkins' tenure at Union Pacific. Comparator information regarding qualifications, reasons for promotion, and compensation can lead to information that may help establish that he was passed over for a promotion not due for a lack of qualifications but due to FRSA-protected activity and damages from being denied a promotion for his FRSA-protected activity. In its brief, Union Pacific contends that Menicucci's privacy interests outweigh any relevancy of Topic 13. (Filing No. 173 at 12.) Again, the Magistrate Judge holds broad discretion in making discovery determinations. Further, the Magistrate Judge has issued a Protective Order to ensure the protection of confidential information, including that of third parties. (Filing No. 59.) The protective order will protect the privacy interest that Menicucci may have regarding this information. Therefore, this Court declines to find that the Magistrate Judge was clearly erroneous in determining that Topics 7, 8, 9, and 13 were relevant.

### 3. Topics 18, 19, 20, 21

Topics 18, 19, 20, and 21, which seek information on Union Pacific's safety and injury reports, complaints, policies, and data in 2018 and 2019, relate to Wilkins' allegations that he opposed policies at Union Pacific he considered to violate FRSA, including issues stemming from PSR, "which was known by [Wilkins] and other [Union Pacific] employees to increase the prevalence of employee injuries and safety violations." (Filing No. 175 at 16.) As the core of Wilkins' claim is that he was retaliated against for opposing FRSA violations, Wilkins should be able to access information regarding potential FRSA violations through discovery. Therefore, this Court agrees with the Magistrate Judge that Topics 18, 19, 20, and 21 are relevant on their face, and the Magistrate Judge was not clearly erroneous in overruling Union Pacific's objections.

### 4. Purported Undue Burden Imposed by Disputed Deposition Topics

Union Pacific also asserts that the burden of preparing corporate witnesses to testify to the disputed topics outweighs any potential benefit of the disputed discovery. (Filing No. 171 at 3-4; Filing 173 at 16.) As explained above, the topics are relevant. However, the Court must limit

15

discovery that is not proportional to the needs of the case, such as when the burden or expense of proposed discovery would outweigh its likely benefit. *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018). The party resisting discovery bears the burden of establishing such undue burden. *See id.* at 742-43. Union Pacific has failed to do so. Union Pacific simply reasserts that the topics are irrelevant and alleges the topics would force Union Pacific to search additional documents beyond the scope of the September 27, 2024 Order to adequately prepare a 30(b)(6) corporate witness. (Filing No. 173 at 7, 12, 14, 16.) The topics are relevant, as discussed above, and Union Pacific has provided only factual, conclusory allegations of potential harm from the topics' discovery, which are insufficient to establish undue burden. *Vallejo*, 903 F.3d at 743. Additionally, Union Pacific has provided no evidence regarding the time or expense required to comply with the Magistrate Judge's orders. *Id.* Therefore, this Court finds that the Magistrate Judge was not clearly erroneous in overruling Union Pacific's objections to discovery on the basis of relevancy or undue burden, and the ruling was not contrary to law.

### B. Requests for Production of Documents Nos. 2 and 10

Union Pacific argues that the Magistrate Judge erred in his interpretation of RFP Nos. 2 and 10 and ruling that Union Pacific produce the Values Line report in Sherer's personnel file and any succession/contingency planning documents involving Wilkins. This Court finds the Magistrate Judge's rulings on RFP Nos. 2 and 10 were not clearly erroneous.

RFP No. 2 requests, "A complete copy of your employee and/or personnel files on Sherer, including but not limited to any files (regardless of their title) on Sherer maintained by your owners, directors, human resources department, benefits department, law department or any other location within your organization." (Filing No. 110 at 16.) The September 27, 2024 Order limited RFP No. 2 to performance, disciplinary, and salary/payroll records. (Filing No. 110 at 16.) Value Lines reports resulting in disciplinary action to Sherer are responsive to this request as limited by the Magistrate Judge. Union Pacific's decision to track and manage Values Line reports in a "separate and independent database" from personnel files is irrelevant to whether the documents are responsive. (Filing No. 173 at 18.) This Court agrees with the Magistrate Judge: if the Values Line report resulted in disciplinary action that is in Sherer's personnel file, then the report itself should also be produced. (Filing No. 164 at 39-40.)

16

RFP No. 10 includes a request for all communications discussing Wilkins being promoted or considered for promotion. Union Pacific argues that succession/contingency planning documents are not responsive to this request because the identification of a successor or contingency planning is distinct from the process of promoting an employee. (Filing No. 173 at 20; Filing No. 164 at 44.) The Magistrate Judge reasoned that if a succession or contingency plan would "involve an actual promotion to a higher position" with higher pay, than it would be included in the category of promotions. (Filing No. 164 at 45.) The Court also notes that succession/contingency planning documents could also be responsive to RFP No. 10(c), regarding Wilkins' designation as a high potential performer, or RFP. No. 10(h), regarding replacing Patricia Kiscoan, Wilkins' superior. (Filing No. 173 at 19; Filing No. 45 at 4.) Therefore, the Magistrate Judge's ruling that succession/contingency planning documents are responsive to RFP No. 10 was not clearly erroneous.

## CONCLUSION

Union Pacific has failed to convince this Court that the Magistrate Judge's orders were clearly erroneous or contrary to the law so as to merit disturbing the Magistrate Judge's decisions. The Magistrate Judge's orders defining the scope of discovery were consistent and proper. Therefore, the Magistrate Judge did not err in his findings in the June 26, 2025 Order, as supplemented by the July 22, 2025 Order.

Accordingly,

**IT IS ORDERED:**

1. Union Pacific's Statement of Objections to the Magistrate Judge's Order (Filing No. 172) is overruled.
2. The Magistrate Judge's Orders (Filing No. 160; Filing No. 171) stand in their entirety.
3. This matter is referred to the Magistrate Judge for case progression.

Dated this 19th day of November 2025.

BY THE COURT:

_Susan M. Bazis_
Susan M. Bazis
United States District Judge