IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RYAN D. WILKINS,<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, and LEONARD SHERER,<br><br>Defendants. | **8:22CV239**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff's Statement of Objections to the Magistrate Judge's Order dated March 20, 2026. (Filing No. 209.) The Court has reviewed the entirety of the record pertaining to this discovery dispute, including, but not limited to, the parties' briefing, transcripts, exhibits, hearing audio, and position statements. For the reasons explained below, the Objection will be sustained.

**BACKGROUND**

Defendant Leonard Sherer ("Mr. Sherer") was Defendant Union Pacific Railroad Company's ("Union Pacific") former Vice President—Law-Labor and Employment. (Filing No. 180.) Several years ago, while this litigation was pending, Union Pacific terminated Mr. Sherer. Following his termination, Mr. Sherer filed a Federal Railroad Safety Act ("FRSA") whistleblower complaint with OSHA against Union Pacific. Mr. Sherer resolved his claims against Union Pacific before any decision could be made on the merits of his complaint.

On January 13, 2026, Plaintiff deposed Mr. Sherer in this case. During the deposition, Mr. Sherer refused to answer certain questions based on the attorney-client privilege, and Defendants'

counsel also objected to questions or instructed Mr. Sherer not to answer questions, asserting the attorney-client privilege. These questions pertained to (1) Mr. Sherer's FRSA claim against Union Pacific; (2) Mr. Sherer's FRSA protected activity; (3) Mr. Sherer's protected activity in his NEOC complaint against Union Pacific; (4) Chief Safety Officer Connie Roseberry's ("Ms. Roseberry") alleged failure to report injuries; (5) Mr. Sherer's alleged failure to report injuries; (6) employees who were terminated for failing to properly report injuries; (7) the facts surrounding a disagreement between Mr. Sherer and Rebecca Gregory (Ms. Gregory")[1] that caused Mr. Sherer to be disciplined; (8) Mr. Sherer's disagreement with his disciplinary action and refusal to sign his disciplinary action letter; and (9) Mr. Sherer's claim that his reputation was damaged and that he was cast in a negative light.

On February 6, 2026, Plaintiff deposed Craig Richardson ("Mr. Richardson"), Union Pacific's former Executive Vice President—Chief Legal Officer and Corporate Secretary. (Filing No. 185.) Citing the attorney-client privilege, counsel for Defendants objected to and instructed Mr. Richardson to either not answer questions, or to answer questions "generally," about (1) the reasons Mr. Sherer lost his temper with Ms. Gregory; (2) what Ms. Gregory reported in her complaint about Mr. Sherer; (3) what was said by Mr. Sherer and Mr. Richardson in the disciplinary meeting; and (4) the substance of Mr. Sherer's post-employment claims against Union Pacific.

On February 20, 2026, counsel for Plaintiff contacted the Magistrate Judge to request a discovery dispute conference about the attorney-client privilege objections asserted during the depositions.[2] (Filing No. 203-7.) On March 6, 2026, the parties had a telephonic discovery dispute conference with the Magistrate Judge to discuss the dispute. (Filing No. 196.) During the nearly 2-hour conference, the parties presented their respective positions. Following the conference, the Magistrate Judge granted Plaintiff leave to submit additional materials and arguments. Plaintiff submitted supplemental materials on March 10, 2026. (Filing No. 203-2.) Defendants submitted

[1] Mr. Sherer was disciplined by Union Pacific on May 5, 2023 based on a disagreement with Ms. Gregory that pertained to this case. Ms. Gregory was also in-house counsel for Union Pacific.

[2] The discovery dispute involved other issues. However, because Plaintiff's Objection centers on the dispute pertaining to the attorney-client privilege objections made during depositions, the other portions of the discovery dispute will not be discussed in this Memorandum and Order.

a joint supplemental statement regarding the discovery dispute on March 12, 2026. (Filing No. 203-6.)

A second telephonic discovery dispute conference was held with the Magistrate Judge on March 19, 2026. (Filing No. 201.) The Magistrate Judge stated his ruling regarding the discovery dispute on the record and summarized his ruling in a written order issued on March 20, 2026. (Filing No. 203.) The Magistrate Judge sustained the attorney-client privilege objections made during the depositions and denied Plaintiff's request to compel further deposition testimony. (Filing No. 202; Filing No. 203.) Plaintiff filed the instant Objection to the Magistrate Judge's order on April 6, 2026. (Filing No. 209.)

**STANDARD OF REVIEW**

In review of a magistrate judge's decision on a nondispositive matter, the district court may reconsider any part of the magistrate judge's order that it finds clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A decision is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed [,]" even if the record contains sufficient evidence to support the finding. *Light of the World Gospel Ministries, Inc. v. Village of Walthill, Nebraska*, 336 F.R.D. 567, 570 (D. Neb. 2020) (quoting *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011)) (quotations omitted).

It is well-established that magistrate judges retain "broad discretion in managing pretrial discovery" and in limiting discovery to what, in the magistrate judge's opinion, are the "'central issues.'" *Mehner v. Panera, LLC*, 8:22CV168, 2023 WL 6810277 (D. Neb. Oct. 16, 2023) (quoting *Hills v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017)). Therefore, the review of a magistrate judge's discovery rulings is "both narrow and deferential[.]" *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quotation omitted).

**DISCUSSION**

Plaintiff raises two objections to the Magistrate Judge's order. First, Plaintiff argues that the Magistrate Judge failed to consider the statutory framework of the Federal Railroad Safety Act ("FRSA") in reaching his decision. Plaintiff maintains that discovery in FRSA claims is meant to be broad and that the need for liberal discovery in a FRSA statutory scheme "trumps" the attorney-

client privilege. According to Plaintiff, by sustaining objections without engaging with the FRSA framework, the Magistrate Judge adopted an unduly restrictive view of discovery. Second, Plaintiff asserts that the Magistrate Judge improperly permitted Defendant to withhold factual (as opposed to privileged) information, including information about Mr. Sherer's FRSA and discrimination claims against Union Pacific. Plaintiff maintains that questions about the circumstances and background of the FRSA and discrimination claims do not seek privileged communications.

"The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client." *United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012). The attorney-client privilege is "narrowly construed" and "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020) (quotation omitted).

The attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. United States,* 449 U.S. 383, 395–96, (1981). In other words, "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id*. (quotation omitted). The party seeking to assert the privilege has the burden of showing that the privilege applies. *Ivers*, 967 F.3d at 715.

The Court has reviewed the excerpts of the deposition transcripts submitted in connection with this discovery dispute. Having done so, the Court agrees with Plaintiff that many of the questions asked—and objected to or not answered by the witnesses—sought facts, as opposed to privileged information. Just by way of example, Plaintiff's counsel asked Mr. Sherer: "Can you outline for me what the basis of your FRSA complaint was?" Mr. Sherer responded: No. I cannot. It's based on confidential information, attorney-client privileged." (Filing No. 203-3, Sherer Depo. 26:19-23.) As another example, Plaintiff's counsel asked Mr. Richardson: "Do you know exactly what caused [Mr. Sherer to lose his] temper?" (Filing No. 203-4, Richardson Depo. at 117:8-9.) Union Pacific objected based in part on attorney-client privilege and counsel instructed Mr.

Richardson not to answer. (Filing No. 203-4, Richardson Depo. 117:10-12.) These questions did not seek privileged information. They sought facts.

Defendants are trying to shield a large amount of discoverable information by improperly invoking the attorney-client privilege in response to questions. Assertions of privilege are being made both by Defendants' counsel and witnesses in response to questions. One exchange in particular highlights this practice: Plaintiff's counsel asked Mr. Sherer, "Did anyone at Union Pacific ever discuss your employment in the context of whether or not you were involved in not reporting injuries under the FRSA?" (Filing No. 203-3, Sherer Depo. 83:15-19.) Mr. Sherer responded: "Again, I think the problem that you're dealing with here is any of these conversations would have involved my role as an attorney at Union Pacific, which would be, again, subject to privilege. (Filing No. 203-3, Sherer Depo. 83:20-24.) Plaintiff's counsel then clarified: "Let's just be clear. I'm not asking you to tell me any legal advice that you might have rendered to Union Pacific . . . What I want to know is, in terms of your employment, did anybody have discussions with you about your employment with Union Pacific related to not properly reporting injuries under the FRSA?" (Filing No. 203-3, Sherer Depo. 83:25-84:9.) Mr. Sherer responded:

> Anything that you're raising, particularly as it relates to reporting, nonreporting, or any issues under FRSA, any issues that relate to safety, unless they involve myself, would have involved my role as legal counsel for Union Pacific. As such, I don't know that I can discuss anything without raising the specter of, you know, violating my obligations as an attorney to disclose privileged and confidential information. I can affirm to you that, in my role as an attorney, I dealt with a lot of safety issues. Safety reporting was some aspect of it. But it could involve anything from injuries that occurred as a result of potential safety issues. I'm using these by example. I'm not providing specifics. It was a very broad scope role. I had personal injury. I had safety. I had labor and employment. Anything that touched upon safety that crossed my desk, again, unless it involved me personally or anybody in my group, would have been subject to privilege.

(Filing No. 203-3, Sherer Depo. 84:5-85:9.)

Mr. Sherer's responses in this line of questioning were unacceptable, for several reasons. First off, these were yes or no questions. They were not complicated questions to answer. Second, as the Court reads it, Mr. Sherer is essentially saying that virtually everything he dealt with at work was privileged, so he cannot provide a response to anything. This is not the law. *See United States*

*v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) ("[W]hen an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply."); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987) (recognizing that the attorney-client privilege does not protect client communications that relate only to business information).[3] There has not been a showing that the attorney-client privilege applies.

Plaintiff only identified a few *specific* questions to which he seeks an answer. The Court surmises that Plaintiff's inability to identify exact questions was due to the number of objections and Plaintiff's counsel's attempts to overcome the objections through follow-up questions. However, Plaintiff was able to categorize the lines of questioning for the Court. The Court will allow Plaintiff to re-depose Mr. Sherer and Mr. Richardson—at Defendants' cost—to ask questions pertaining to those categories, including appropriate follow-up questions.[4] As to the specific categories identified by Plaintiff, the Court makes the following findings and observations:

**1. Sherer Deposition (Filing No. 203-3)**

**a. Questions about Mr. Sherer's FRSA claim against Union Pacific (Sherer Depo. 26:19-30:25); FRSA protected activity (Sherer Depo. 34:22-35:7); and Mr. Sherer's protected activity in his NEOC complaint (Sherer Depo. 45:1-10).**

Plaintiff identified a few specific questions pertaining to these lines of questioning: (1) "Can you outline for me what the basis of your FRSA complaint was?" (Filing No. 203-3, Sherer Depo. 26:19-23); "What were those [FRSA] protected activities?" (Filing No 203-3, Sherer Depo. 34:22-35:7); and (3) "What was your claim - - what was the protected activity you were claiming in your NEOC/EEOC complaint?" (Filing No. 203-3, Sherer Depo. 45:1-10). Mr. Sherer must answer these questions, including any appropriate follow-up questions. These questions do not require Mr. Sherer to reveal communications made for the purpose of rendering legal services. Plus, even if they do, Defendants have not sufficiently explained how. Defendants suggest that

[3] The Court notes that although Defendants complained about the lack of specificity in Plaintiff's counsel's questions during the depositions, this could hardly be helped. Plaintiff's counsel was trying to collect information which would allow her to be more specific, but the transcript excerpts presented to the Court show that Plaintiff's counsel was being rejected at almost every turn. (Filing No. 203-3; Filing No. 203-4.)

[4] The Court will not address Plaintiff's argument pertaining to the scope of discovery in FRSA actions. Given the Court's other rulings in this Memorandum and Order, it is unnecessary to reach this issue.

questioning on these topics would necessarily require the disclosure of attorney-client communications. It is unclear to the Court how providing underlying information would automatically require the disclosure of legal advice.

The Court agrees with Plaintiff that questions about what Mr. Sherer alleges violated the law in connection with his FRSA complaint and what he reported do not require the disclosure of privileged communications. The same is true regarding his charge of discrimination filed with the NEOC. Questions about the factual basis of Mr. Sherer's discrimination charge, including what happened, who was involved, and the alleged discriminatory conduct do not require the disclosure of privileged communications. These questions pertain to adversarial proceedings between Union Pacific and Mr. Sherer after Mr. Sherer's employment ended. Plaintiff may re-depose Mr. Sherer about these matters.

**b. Ms. Roseberry's alleged failure to report injuries (Sherer Depo. 81:9-83:13; 93:21-94:13); Mr. Sherer's alleged failure to report injuries (Sherer Depo. 83:14-92:12); and employees who were terminated for failing to properly report injuries (Sherer Depo. 92:13-93:3).**

Like the topics discussed above, questions about Ms. Roseberry and the reporting of injuries seek underlying facts about workplace events, personnel actions, and workplace policies. They do not seek the content of legal advice. The Court agrees with Plaintiff that Mr. Sherer could have discussed the underlying factual issues regarding these matters without revealing what legal advice (if any) he provided about these issues. Just for instance, the names of individuals terminated or disciplined are not attorney-client privileged. Therefore, Mr. Sherer may be re-deposed regarding these topics.

**c. The facts surrounding a disagreement between Mr. Sherer and Ms. Gregory that caused Mr. Sherer to be disciplined (Sherer Depo. 97:6-16); Mr. Sherer's disagreement with this disciplinary action and refusal to sign his disciplinary action letter (Sherer Depo. 117:24-119:19); and Mr. Sherer's claims of damaged reputation and being cast in a negative light (Sherer Depo. 121:11-122:20).**

Mr. Sherer and Ms. Gregory had an argument in March of 2023 about this case which resulted in a subsequent meeting where Mr. Sherer received a letter of reprimand. The facts

underlying Mr. Sherer's workplace behavior and discipline related to the event are not privileged. There is no reason why Mr. Sherer cannot provide information about facts and circumstances about the workplace incident without revealing legal advice communicated in connection with this case.

Defendants attempt to characterize Mr. Sherer's relationship with Ms. Gregory as that of attorney-client when this incident occurred. Still, even accepting this as true, it does not necessarily follow that every conversation and interaction between them was privileged. Mr. Sherer will be directed to testify about the facts underlying and surrounding this incident.

To be clear, however, Plaintiff is not entitled to details about legal strategies that Defendants undertook or decided not to undertake, or the reasons why those strategies were pursued or not pursued, in this litigation. Plaintiff is not entitled to know the substance of conversations conveying legal opinions, advice, or options, or the reasons why such legal opinions, advice or options were deemed acceptable or not acceptable. Plaintiff will not be permitted to use these depositions to uncover Defendants' litigation strategy.

**2. Richardson Deposition (Filing No. 203-4)**

**a. (1) the reasons Mr. Sherer lost his temper with Ms. Gregory and what Ms. Gregory reported in her complaint against Mr. Sherer; (2) what was said by Mr. Sherer and Mr. Richardson in the disciplinary meeting; and (3) the substance of Mr. Sherer's post-employment claims.**

For the reasons stated above, Mr. Richardson will be directed to testify about his knowledge of the facts surrounding the incident between Mr. Sherer and Ms. Gregory. His knowledge about why or how Mr. Sherer reacted in connection with a personnel matter in the workplace does not necessarily require the disclosure of confidential communications made for purposes of securing legal advice. Again, however, details about legal strategies, disagreements about those strategies, and the substance of conversations conveying legal advice remain off-limits, as explained previously in this Memorandum and Order.

Also, for reasons previously stated, Mr. Richardson may be deposed again for questioning related to his knowledge of Mr. Sherer's FRSA and NEOC claims against Union Pacific.

Accordingly,

**IT IS ORDERED** that Plaintiff's Statement of Objections to the Magistrate Judge's Order (Filing No. 209) is sustained. Plaintiff may depose Mr. Sherer and Mr. Richardson, at Defendants' cost, as set forth in this Memorandum and Order. These depositions must occur promptly. No later than 7 days following their completion, the parties shall advise the Court whether any information learned during the depositions has an impact on the motions pending in this case and, if so, whether supplemental briefing on any pending motion is requested.

**IT IS FURTHER ORDERED** that the pretrial conference and trial in this case are cancelled and will be reset once the parties advise the Court if supplemental briefing is required for the motions currently pending before the Court.

Dated this 3rd day of August, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge